UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MIDTOWN INVESTMENT
GROUP, et al.,

    Plaintiffs,                                      Civil Action No. 20-10239

vs.

                                                       HON. MARK A. GOLDSMITH

MASSACHUSETTS BAY
INSURANCE COMPANY,

    Defendant.
_____/

**OPINION & ORDER**
**GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Dkt. 25)**

Plaintiff Midtown Investment Group has sued its insurer, Defendant Massachusetts Bay Insurance Company, for failing to pay for interior building damage caused by water in February 2019. Midtown insists that the loss is covered by the insurance policy, while Massachusetts Bay claims that two policy exclusions completely bar coverage for the claim. Because neither exclusion applies to bar the coverage sought, Midtown is entitled to summary judgment.

    **I.    BACKGROUND**

The parties substantially agree on the facts giving rise to this case. Midtown and Massachusetts Bay were parties to a commercial insurance policy no. ODW-D673917-00, which insured the commercial building located at 26250 Northwestern Hwy. in Southfield, Michigan from August 20, 2018 until August 20, 2019. Policy (Dkt. 25-2).

Around August or September 2018, Midtown's executive director Jimmy Danou had a contractor examine the building's roof for repairs that Danou had reason to believe were necessary. Danou Examination Under Oath at 56 (Dkt. 29-4).

In January 2019, Midtown hired a roofer to install a new torch-down roof over the existing roof. Roofing Proposal (Dkt. 25-5). According to Midtown, its roofer had not completed the job before inclement weather interrupted his work. 2/12/19 Claim Log Note (Dkt. 25-6). On or about February 8, 2019, the first and second levels of the building suffered significant water damage. 2/15/19 Claim Log Note at PageID.520–521 (Dkt. 25-7).

Midtown notified Massachusetts Bay of the loss on February 12, 2019. 2/12/19 Claim Log Note. Massachusetts Bay's representative inspected the loss on February 15, 2019 and observed that the majority of interior water damage was located on the west end of the building, beneath a new section of flat roofing material installed a few weeks earlier. 2/15/19 Claim Log Note at PageID.520–521.

Engineer Sarah Rush, hired by Massachusetts Bay's building consultant, inspected the loss on February 19 and 26, 2019 and made the following observations, as excerpted in Midtown's uncontested summary of her report:

- Approximately 30 percent of the roof area had been recovered with a single layer of modified bitumen roof adhered to a mechanically attached fiberboard;
- Regions of ongoing water infiltration were distributed throughout the building;
- Damaged interior finishes correlated with the locations and severity of the points of water infiltration;
- Wet areas were observed below the recently recovered area of the roof without indication of long-term moisture conditions;
- Although existing water infiltration and water damage were present throughout the building, the areas where the recover work was present

- exhibited an increased severity of the volume and frequency of water infiltration;
- Improper and missing lap edge termination allowed water to enter beneath the new membrane;
- The mechanical fasteners used to install the new coverboards penetrated through the existing built-up roof membrane, providing opportunity for water to damage many areas that were not affected by the existing deficiencies in the prior built-up roof;
- The severity of the water infiltration was increased by the new membrane, which obstructed water beneath it from entering the drain above the membrane.

See Rush Report at PageID.525–529 (Dkt. 25-8).

Rush also observed that at one abandoned equipment curb, the cover over the opening blew off during a windstorm on March 4, 2019. Id. at PageID.526. Rush further clarified in an email that in her view, the "primary cause of water infiltration was the deficient conditions within the new roofing recover installation." Rush 6/11/19 Email (Dkt. 25-9). She also noted that "[w]ater damage in the area of the blown off roof was more significant than elsewhere in the recover area." Id.

Following its inspection of the property, Massachusetts Bay sent a partial payment of $100,000 to Midtown. See 5/31/19 Claim Log (Dkt. 25-11). The claim log includes the following note:

> Based on confirmation that this loss is a covered event due to water damage to the interior of the structure as a result of melting snow that is covered . . . a partial loss payment of $100,000 is now issued.

Id. Massachusetts Bay asserts that the final determination was not made until later and that coverage was ultimately denied. See Counterstatement of Material Facts ¶ 14 (Dkt. 29) (citing 2/13/2020 Coverage Determination Letter (Dkt. 29-3); Statement of Additional Material Facts ¶ 26 (Dkt. 29)).

3

## II. MOTION FOR SUMMARY JUDGMENT STANDARD

A motion for summary judgment under Federal Rule of Civil Procedure 56 shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when there are "disputes over facts that might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[F]acts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Once the movant satisfies its initial burden of demonstrating the absence of any genuine issue of material fact, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact. Scott, 550 U.S. at 380; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," Scott, 550 U.S. at 380 (quoting Matsushita, 475 U.S. at 586), as the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," id. (quoting Anderson, 477 U.S. at 247–248) (emphasis in original); see also Babcock & Wilcox Co. v. Cormetech, Inc., 848 F.3d 754, 758 (6th Cir. 2017) ("A mere scintilla of evidence or some metaphysical doubt as to a material fact is insufficient to forestall summary judgment.").

## III. ANALYSIS

Under Michigan law, which is applicable in this diversity action, an insurance policy is treated like any other contractual agreement. Hunt v. Drielick, 852 N.W.2d 562, 565 (Mich. 2014).

4

When determining coverage under a policy of insurance, a court applying Michigan law employs a two-part analysis. The court must first determine whether the policy provides coverage to the insured; then the court must determine if that coverage is negated by an exclusion. Id. While the insured has the burden of establishing coverage under the terms of the policy, the insurer has the burden of proving the applicability of exclusions, which are strictly construed in the insured's favor. Id.

The policy is an "all risk" policy covering all direct physical loss unless subject to an express exclusion or limitation. See Policy at PageID.334–336. Midtown invokes this broad grant of coverage in its motion, Mot. at 8, which Massachusetts Bay does not challenge, see Resp. at 6. Nor could it. The policy states that the insurer will pay for "for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss," and it defines "Covered Causes of Loss" as "[r]isks of direct physical loss" unless the loss is excluded by the "exclusions" or "limitations" sections of the policy. Policy at 334–336. And as discussed above, the insured property indisputably experienced interior damage from precipitation leaking through the roof.

Massachusetts Bay focuses its response on two exclusions: the negligent work exclusion, and the wear-and-tear exclusion. As the analysis that follows demonstrates, neither exclusion bars coverage for the losses Midtown claims to be covered. Midtown is, therefore, entitled to summary judgment as defined below.

**A. The Negligent Work Exclusion**

The policy contains the following provision:

B. Exclusions

. . .

    3. We will not pay for loss or damage caused by or resulting from paragraph a., b. and c. below. But if an excluded cause of loss that is listed in

>paragraphs a., b. and c. below, results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.
>
>. . .
>
>c. Negligent Work
>
>Faulty, inadequate or defective:
>
>>(1) Planning, zoning, development, surveying, siting;
>>
>>(2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
>>
>>(3) Materials used in repair, construction, renovation or remodeling; or
>>
>>(4) Maintenance;
>
>of part or all of any property on or off the described premises.

Policy at PageID.374–375.

The parties agree that the water damage at issue was substantially caused by the faulty work of the roofing contractor, which allowed precipitation to penetrate the roof. Both rely on Rush's deposition at 74 (Dkt. 25-15). See Mot. at 11–12; Resp. at 8 (Dkt. 29). There is no remaining controversy that precipitation entering into the building would be a covered loss. However, Massachusetts Bay argues that coverage is barred because the "loss was the result, in part, based upon the faulty workmanship of Plaintiff's contractors." Resp. at 9. The argument appears to be that if a loss is the product of both defective workmanship and a separate cause of loss that is covered, the exclusion bars coverage. But as the policy makes plain, an exception to the negligent work exclusion is triggered precisely when the loss results from the combined effect of negligent work and a covered cause of loss.

Massachusetts Bay's argument has been squarely rejected by the Michigan courts. In Walters Beach Condo. Ass'n v. Home-Owners Ins. Co., No. 335172, 2017 WL 5503789, at *3 (Mich. Ct. App. Nov. 16, 2017), the court interpreted a negligent work provision nearly identical

6

to the negligent work exclusion at issue here.[1] Defective construction work allowed water penetration from a rainstorm causing significant damage. Id. The court reversed summary disposition in favor of the insurer, holding that the negligent work exclusion did not bar coverage when there was both defective workmanship and a covered cause of loss, as well:

> The plain language of this provision requires, as defendant concedes, that damage sustained due to a covered cause of loss, such as wind-driven rain, is covered under the policy even though the damage was also a result of a construction defect.

Id. While the insurer was not responsible for the cost of repairs of the construction defect itself (e.g., the inadequately installed flashing), it was responsible for interior water damage caused by wind-driven rain. Id.

Massachusetts Bay offers no response to Walters Beach. And this Court can envision no reason why it should not be followed. Because it is irrelevant that negligent workmanship may have played a role in allowing precipitation to penetrate the building, summary judgment in favor of Midtown on the defective workmanship exclusion is appropriate.[2]

### B. The Wear-and-Tear Exclusion

Massachusetts Bay invokes another exclusion which does not bar coverage because, as explained below, Midtown has limited its claim to damage caused by its recent roof recovering work. The exclusion provides:

---

[1] The provision stated, "We will not pay for loss or damage caused by or resulting from any of the following. But if loss or damage by a Covered Cause of Loss results, we will pay for that resulting loss or damage." Walters Beach, 2017 WL 5503789, at *3.

[2] Massachusetts Bay concludes its argument on this point by stating, "Plaintiff has not established or otherwise met the required burden to provide that a subsequent covered loss occurred for which any limited coverage would otherwise be applicable." Resp. at 9–10. If Massachusetts Bay meant this as distinct argument based on Midtown's alleged failure to show a "subsequent" loss, the argument is nonsensical, because the precipitation causing the loss unquestionably post-dated the defective work.

> B. Exclusions
>
> . . .
>
>> 2. We will not pay for loss or damage caused by or resulting from any of the following:
>>
>> . . .
>>
>>> j. Other Types of Loss
>>>
>>>> (1) Wear and tear;
>>>>
>>>> . . .
>>>>
>>>> But if an excluded cause of loss that is listed in paragraphs (1), (2), (3), (4), (5), (6) and (7) above, results in any of the "specified causes of loss", "accident", "electronic circuity impairment" or building glass breakage, we will pay for the loss or damage caused by any of the "specified causes of loss", "accident", "electronic circuity impairment" or building glass breakage.

Policy at PageID.372–373.

Midtown does not contest that the building's roof had leaks prior to the repairs, or that losses attributable to water penetrating such leaks would be properly excluded from coverage under the wear-and-tear exclusion. See Mot. at 15–17. Instead, it presents testimony from Rush establishing that the interior water damage was not caused by preexisting wear and tear, but by the roofer's faulty work. When asked about "old leaks," which pre-dated the defective work and "new leaks" in the recovered area, which post-dated the defective work and penetration of precipitation, Rush said there would have been no damage had the work been done properly:

> Q. All I'm saying is there's new leaks and old leaks in the roof recover area, and the area where there were old leaks, had the work been done correctly in the recover area, there would have been no active leaking from those points of water infiltration, correct?
> A. Like either, right?
> Q. Either of them.
> A. Correct.

8

Rush Dep. at 59–60. This testimony is consistent with Rush's earlier opinion that the "primary cause of water infiltration was the deficient conditions within the new roofing recover installation." Rush 6/11/19 Email.

Massachusetts Bay's response misses the mark. It essentially presents two unconvincing arguments: that none of the exceptions to the wear-and-tear exclusion described in the unnumbered paragraph of Policy provision B.2.j. applies, and that wear and tear predated the repairs.

Concerning the exceptions, Midtown did not invoke any of the exceptions. Instead, Midtown presented unrebutted evidence that the loss it claims to have been covered was caused by water penetration facilitated by the negligent work, rather than by wear and tear. Because Midtown had shown the exclusion was not applicable, it had no need to establish any exception to the exclusion. So that portion of Massachusetts Bay's argument is irrelevant.

Concerning preexisting wear and tear, it is true (and undisputed) that wear and tear predated the repair efforts. It is also true that such wear and tear might eventually have caused interior water damage in areas left unrepaired, and might even have caused damage in parts of the building where the roof was not repaired. But none of that is relevant to Midtown's claim, which only claims coverage for losses made possible by the negligent repair work.[3]

---

[3] As Midtown stated:

> To be clear, Plaintiff's claim is limited to the new water damage to the interior of the building that is beneath the section of the roof where the roof recover work was performed, albeit negligently. Plaintiff's claim does not include any of the interior damage that pre-dated the February 8, 2019 loss and does not include any interior damage that is not within the section of the building where the roof recover work was performed.

Reply at 4 (Dkt. 30).

As discussed above, Rush's testimony establishes that properly performed recover work would have prevented leaking to the area beneath that work. And, as confirmed in the reply brief, Midtown only seeks coverage for losses attributable to leakage in the area the beneath the faulty recover work. Reply at 4 (Dkt. 30). So Midtown has established that the loss for which it seeks coverage was caused by precipitation gaining entry via faulty work, not by wear and tear.

Faced with Midtown's argument that none of the loss for which Midtown seeks coverage was caused by wear and tear, Massachusetts Bay failed to show that a fact question exists. It neither rebutted Rush's deposition testimony nor explained why the testimony does not support Midtown's conclusion that wear and tear did not cause the leaks beneath the recover area. Thus, summary judgment is appropriate in Midtown's favor based on the Court's holding that the wear-and-tear exclusion does not bar coverage for losses as defined by Midtown.

**C. Appraisal**

The policy mandates appraisal in accordance with Michigan Compiled Laws § 500.2833(1)(m) to determine the amount of the loss. Federal districts courts applying Michigan law in insurance disputes involving appraisal interpret a policy's terms, while the appraisers resolve, at least in the first instance, any factual disputes about the amount insured. See Scottsdale Ins. Co. v. Altman Mgmt. Co., 832 F. App'x 998, 999 (6th Cir. 2021). The parties in this case have not identified any factual disputes that need to be resolved, so the appraisers' role may be limited to valuation.[4] However, in turning this case over to appraisers, the Court wishes to

---

[4] While the appraisers' role is in some sense always limited to valuation, appraisers are sometimes called upon to determine factual questions such as whether a particular loss is attributable to a covered or non-covered event. Although the total value of loss experienced in such cases may or may not be disputed, the appraisers determine the valuation of covered loss by distinguishing between losses attributable to covered and non-covered causes. See Shina v. State Farm Fire & Cas. Co., No. 20-10080, 2021 WL 391419, at *5 (E.D. Mich. Feb. 4, 2021) (discussing recent developments in this area of the law).

emphasize that Midtown must be held to its representations concerning the limitations of the losses for which it seeks compensation, particularly its representation that its "claim is limited to the new water damage to the interior of the building that is beneath the section of the roof where the roof recover work was performed, albeit negligently." See Reply at 4.

### IV. CONCLUSION

Midtown's motion for summary judgment (Dkt. 25) is granted. The parties must file a joint statement, within 14 days of this opinion's date, setting forth their views on what future proceedings are required in this case. A telephonic status conference will be conducted on August 18 at 4:00 p.m.

SO ORDERED.

Dated: July 27, 2021　　　　　　　　　　　　　s/Mark A. Goldsmith
　　　　Detroit, Michigan　　　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　　　　United States District Judge